

# IN THE
# TENTH COURT OF APPEALS

## No. 10-12-00263-CR

**PHILLIP TORRES,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 249th District Court**
**Johnson County, Texas**
**Trial Court No. F46280**

## MEMORANDUM OPINION

In three issues, appellant, Phillip Torres, challenges his convictions for burglary of a habitation, a second-degree felony, and attempted burglary of a habitation, a third-degree felony. *See* TEX. PENAL CODE ANN. §§ 15.01, 30.02(c)(2) (West 2011). Specifically, appellant asserts that the trial court erred by: (1) denying his *Batson* challenge to the State's use of a peremptory strike during the jury-selection process; (2) allowing the State to elicit testimony about appellant's post-arrest silence; and (3) including a voluntary-intoxication instruction in the jury charge. We affirm.

## I. BACKGROUND

This case involves the burglary and attempted burglary of two houses located in Burleson, Texas, on February 11, 2012. Witnesses testified that, on the day in question, appellant and Jose Olmos-Castillo attempted to burglarize a house located on Rand Street. Likely believing that the house was vacant, appellant parked in the driveway and approached the front door. The homeowner, Chris Gaus, reported that he observed appellant trying to open his locked front door. When appellant noticed that Gaus was home, appellant and Olmos-Castillo fled.

Later that day, appellant and Olmos-Castillo noticed an open garage door at a house on Thistle Meade Circle. Appellant parked his car, went inside the garage, and took a Ryobi weedeater, a Sony DVD player, and a soaker hose. Appellant also attempted to steal a leaf blower; however, he dropped the leaf blower, which alerted the homeowner, Robert Ward, to his presence. The homeowner yelled at and made eye contact with appellant. Appellant got in his car and drove away.

Based on descriptions of appellant's vehicle given by Gaus and Ward, police stopped appellant. When asked to step out of the vehicle, appellant refused. Witnesses testified that appellant was very vocal at the time of the stop and that police had to physically remove appellant from the vehicle. Police recognized the items stolen from Ward's garage in the back seat of appellant's vehicle. Thereafter, Gaus and Ward arrived at the scene of the traffic stop and identified appellant as the perpetrator of the alleged crimes.

On March 22, 2012, appellant was indicted for burglary of Ward's garage and the

attempted burglary of Gaus's house. Ultimately, a jury found appellant guilty of both offenses. The jury sentenced appellant to eight years' confinement in the Institutional Division of the Texas Department of Criminal Justice on both counts; however, the second count, which pertained to the attempted burglary of Gaus's house, was probated for a period of ten years. The trial court certified appellant's right of appeal, and this appeal followed.

## II.     APPELLANT'S *BATSON* CHALLENGE

In his first issue, appellant contends that the trial court clearly erred in denying his *Batson* challenge to the State's use of a peremptory strike against Juror 18, a twenty-four year old, Hispanic male. *See generally Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). In *Batson*, the United States Supreme Court held that, while a prosecutor ordinarily may exercise peremptory strikes for any reason related to his views concerning the outcome of the trial, "the Equal Protection Clause forbids the prosecutor to challenge potential jurors on account of their race." *Id.* at 89, 106 S. Ct. at 1719.

A *Batson* challenge to a peremptory strike consists of three steps:   (1) the opponent of the strike must establish a prima facie showing of racial discrimination; (2) the proponent of the strike must articulate a race-neutral explanation; and (3) the trial court must decide whether the opponent has proved purposeful racial discrimination. *See Purkett v. Elem*, 514 U.S. 765, 767-68, 115 S. Ct. 1769, 1770-71, 131 L. Ed. 2d (1995); *Young v. State*, 283 S.W.3d 854, 866 (Tex. Crim. App. 2009). Once the State proffers race-neutral explanations for its peremptory strikes, the burden is on the defendant to

convince the trial court that the prosecution's reasons were not race-neutral. *Ford v. State*, 1 S.W.3d 691, 693 (Tex. Crim. App. 1999). Thus, the burden of production shifts from the defendant in step one to the State in step two; but the burden of persuasion never shifts from the defendant. *Id.* The trial court's ruling in the third step must be sustained on appeal unless it is clearly erroneous. *Grant v. State*, 325 S.W.3d 655, 657 (Tex. Crim. App. 2010) (citing *Snyder v. Louisiana*, 552 U.S. 472, 477, 128 S. Ct. 1203, 1207-08, 170 L. Ed. 2d 175 (2008)). "Because the trial court's ruling requires an evaluation of the credibility and demeanor of prosecutors and venire members, and because this evaluation lies peculiarly within the trial court's province, we defer to the trial court in the absence of exceptional circumstances." *Id.*; *see Watkins v. State*, 245 S.W.3d 444, 448 (Tex. Crim. App. 2008) ("[A] reviewing court should examine the trial court's conclusion that a facially race-neutral explanation for a peremptory challenge is genuine, rather than a pretext, with great deference, reversing only when the conclusion is, in the view of the record as a whole, clearly erroneous.").

The trial court conducted a hearing outside the presence of the jury on appellant's *Batson* challenge. At the hearing, appellant argued the following:

> Your Honor, on behalf of the defense, we would like to challenge, make [a] Batson challenge to the peremptory strike of Carlos Ortiz by the State. Mr. Ortiz was the only Hispanic male in the—the only Hispanic in the bubble after the cause were stricken, so we're making [a] Batson challenge.
>
> And for the record, he didn't speak very much during the hearing. He didn't say anything at all when it came to, as far as I know, that came to—that was the weight of evidence to sentencing. There was no reason for them to strike him, in my opinion, other than the fact that he was a Hispanic male and would have been on the panel and roughly the same

age of my client.

The prosecutor responded that he struck Ortiz from the panel because of his age. The prosecutor noted that he struck Juror 29, who was twenty-two years old, Juror 34, who was twenty-three years old, and Juror 1, who was twenty-three years old. In essence, the prosecutor struck jurors who were under twenty-five years of age because "they simply do not have enough life experience to properly serve on this jury." The trial court ultimately denied appellant's *Batson* challenge.

Here, appellant made a prima facie showing that the State's strike may have been racially motivated. However, the State responded with a race-neutral reason for using a peremptory strike on Ortiz—striking every person on the venire panel that was under the age of twenty-five. Appellant was unable to refute the prosecution's explanation or demonstrate that the State's explanation was merely a pretext for discrimination. Therefore, according great deference to the trial court's denial of appellant's *Batson* challenge, we cannot say that, based on our review of the record, the trial court's ruling is clearly erroneous. *See Snyder*, 552 U.S. at 477, 128 S. Ct. at 1207-08; *Grant*, 325 S.W.3d at 657; *Watkins*, 245 S.W.3d at 448; *see also Robertson v. State*, No. 10-12-00076-CR, 2012 Tex. App. LEXIS 10581, at **2-3 (Tex. App.—Waco Dec. 20, 2012, no pet.) (mem. op., not designated for publication). Accordingly, we overrule appellant's first issue.

### III.   POST-ARREST SILENCE

In his second issue, appellant contends that the trial court erred by allowing the State to elicit testimony regarding appellant's post-arrest silence, which violates appellant's right to be free from compelled self-incrimination.

Appellant complains about a portion of Burleson Police Officer Wesley Routson's testimony. Specifically, Officer Routson testified that he responded to the burglary reports and participated in the traffic stop on appellant's vehicle. Officer Routson stated that he looked inside appellant's vehicle and saw several items in the vehicle that matched the description of the reported stolen items. Subsequently, the prosecutor asked Officer Routson the following: "In the Defendant's talking to you[,] did he offer any explanation on why these stolen items were in the vehicle?" Appellant objected and was permitted to voir dire Officer Routson. On voir dire, Officer Routson admitted that appellant had not been read his *Miranda* rights after he was handcuffed. Later, the prosecutor asked: "Okay. Now did Mr. Torres offer any explanation to you when he was speaking as to why these items were in the back of his vehicle?" Officer Routson replied, "No." Appellant once again objected that Officer Routson's testimony violated appellant's constitutional right to remain silent and requested a mistrial. After a hearing outside the presence of the jury, the trial court overruled appellant's objection and denied his request for a mistrial. The trial court did mention, however, the following:

> Okay. Basically what my ruling is I think the questioning of this witness needs to make clear as to whether or not the Defendant was under arrest or not under arrest and whether he was being interrogated or not being interrogated. And if he was not being interrogated, the proper question to ask the officer is what did the Defendant say, not what he didn't say.

In *Salinas v. Texas*, the United States Supreme Court has recently stated the following with regard to the constitutional protections of the Fifth Amendment:

> But regardless of whether prosecutors seek to use silence or a confession

that follows, the logic of *Berghuis* applies with equal force: A suspect who stands mute has not done enough to put police on notice that he is relying on his *Fifth Amendment* privilege.

> . . . .

Before petitioner could rely on the privilege against self-incrimination, he was required to invoke it. Because he failed to do so, the judgment of the Texas Court of Criminal Appeals is affirmed.

2013 U.S. LEXIS 4697, at **18, 23, 133 S. Ct. 2174, 2182-84, 186 L. Ed. 2d 376 (June 17, 2013) (emphasis in original).

In the instant case, appellant did not invoke his Fifth Amendment rights when he refused to offer an explanation to police for the items found in the back seat of the vehicle. *See id.* Moreover, the prosecutor's questions touched on appellant's failure to offer an explanation for the items in the back seat of the vehicle, rather than commenting on the issue of appellant's silence. *See Reyes v. State*, 422 S.W.3d 18, 24-26 (Tex. App.—Waco 2013, pet. ref'd) (noting, among other things, that a "defendant's unexplained possession of property recently stolen in a burglary permits an inference that the defendant is the one who committed the burglary" (citing *Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006)). Therefore, based on the foregoing, we cannot say that the trial court abused its discretion in overruling appellant's objection to the admission of Officer Routson's testimony that appellant did not provide an explanation for his possession of recently-stolen property. *See Salinas*, 2013 U.S. LEXIS 4697, at **18, 23, 133 S. Ct. at 2182-84; *Reyes*, 422 S.W.3d at 24-26; *see also Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011) (stating that a trial judge's decision on the admissibility of evidence is reviewed under an abuse-of-discretion standard and will not be reversed

if it is within the zone of reasonable disagreement). We overrule appellant's second issue.

## IV. THE JURY CHARGE

In his third issue, appellant complains that the trial court erred by including an instruction on voluntary intoxication in the jury charge. Specifically, appellant argues that the issue of voluntary intoxication was not raised, nor was there sufficient evidence in the record to suggest that he was intoxicated prior to or during the commission of the charged offenses. We disagree.

### A. Standard of Review

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If error is found, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003). If an error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Conversely, if error was not preserved at trial by a proper objection, a reversal will be granted only if the error presents egregious harm, meaning appellant did not receive a fair and impartial trial. *Id.* To obtain a reversal for jury-charge error, appellant must have suffered actual harm and not just merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

### B. Applicable Law

Under Texas Law, the trial court must provide the jury with "a written charge

setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in [its] charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007); *see Walters v. State*, 247 S.W.3d 204, 208 (Tex. Crim. App. 2008). "This law requires the trial judge to instruct the jury on statutory defenses, affirmative defenses, and justifications whenever they are raised by the evidence." *Walters*, 247 S.W.3d at 208-09 (citing TEX. PENAL CODE ANN. §§ 2.03, 2.04 (West 2011); *Arnold v. State*, 742 S.W.2d 10, 13 (Tex. Crim. App. 1987)). "Some information, such as the elements of the charged offense, must appear in the jury charge and is without question the law applicable to the case." *Sakil v. State*, 287 S.W.3d 23, 26 (Tex. Crim. App. 2009) (internal citations & quotations omitted).

"But a section 8.04(a) instruction need not appear in every jury charge, and therefore, there is no *sua sponte* duty to instruct the jury on that issue, but the judge may do so, if the question of voluntary intoxication applies to the case." *Id.* (citing *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)). The Court of Criminal Appeals has also stated that "a Section 8.04(a) instruction is appropriate if there is evidence from any source that might lead a jury to conclude that the defendant's intoxication somehow excused his actions." *Sakil*, 287 S.W.3d at 26. Moreover, a defendant need not rely upon intoxication as a defense in order for the charge to include a Section 8.04(a) instruction. *Taylor v. State*, 885 S.W.2d 154, 158 (Tex. Crim. App. 1994) ("Subsection (a) simply provides that intoxication is not a defense. We do not believe that a defendant needs to rely upon intoxication as a defense in order to implicate this provision. Rather, if there

is evidence from any source that might lead a jury to conclude that the defendant's intoxication somehow excused his actions, an instruction is appropriate."). "The function of the jury charge is not merely to avoid misleading or confusing the jury, but to lead and to prevent confusion." *Sakil*, 287 S.W.3d at 26 (internal citations & quotations omitted).

## C. Discussion

Here, Officer Randy Petty of the Burleson Police Department testified that appellant had a can of "Jer-a-mix" in the cup holder in the front of the vehicle. Officer Petty noted that the can appeared to contain paint thinner. Later, Officer Petty stated that some people use paint thinner "as an intoxicant to huff it or something like that." And Officer Petty believed that appellant was "intoxicated on something" when he spoke with appellant at the scene of the traffic stop. Nevertheless, Officer Petty poured out the contents of the can.

Officer Routson echoed Officer Petty's sentiments. Specifically, Officer Routson testified that a can of Humex, "a Mexican-type soda," was found in the center console of the vehicle. After observing the can, Officer Routson determined that the can's contents "were not soda contents." Officer Routson noticed a "[v]ery strong" odor of paint thinner. Based on his training and experience, Officer Routson stated that someone would put paint thinner in a soda can "for huffing, to smell it to get high" and that "[t]he fumes from it will make you intoxicated for awhile [sic]." Officer Routson acknowledged that he has encountered the huffing of paint thinner several times in his experience as an officer with the Burleson Police Department.

We conclude that the foregoing testimony raised the issue of voluntary intoxication and, thus, empowered the trial court to issue a section 8.04(a) instruction in the jury charge. *See* TEX. PENAL CODE ANN. § 8.04(a); *see also Sakil*, 287 S.W.3d at 26. The fact that defendant did not request such an instruction and, instead, objected to the inclusion of the instruction in the jury charge is of no consequence. *See Taylor*, 885 S.W.2d at 158. Accordingly, we cannot conclude that the inclusion of the section 8.04(a) instruction in the jury charge was erroneous. *See Sakil*, 287 S.W.3d at 26; *Delgado*, 235 S.W.3d at 249; *see also Hutch*, 922 S.W.2d at 170. We overrule appellant's third issue.

## V. CONCLUSION

Having overruled all of appellant's issues on appeal, we affirm the judgments of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
  Justice Davis, and
  Justice Scoggins
Affirmed
Opinion delivered and filed June 12, 2014
Do not publish
[CR25]